UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CAESAR ROGERS,<br><br>            Plaintiff,<br><br>      v.<br><br>JOE WILLIAMS, JR.,<br>DE'MARCUS HOLLOWAY,<br>LEONDRE KINCY,<br>ASANIE ANSINE,<br>MYLES CALHOUN,<br>KENNETH LUCAS, JR.,<br>JEFFREY DAVIS,<br>JUSTIN THOMAS,<br>CARMYHAH ROBINSON,<br>KENNETH GRAVES, JR.,<br>JOHNATHAN CLARK,<br>ANDREW PENDELTON,<br>LEE MAJOR,<br>FLEMISTER WILEY, and<br>DENNIS TURNER,<br><br>            Defendants. | Civil Action File No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. This case arises in part from Caesar Rogers' efforts as a class member plaintiff and witness in a class action conditions of confinement case arising from the systematically unconstitutional environment at the Georgia Department of Corrections' Special Management Unit. *See Mohamed v. Emmons*, No. 5:15-cv-41-MTT (M.D. Ga.).

2. Weeks before the Court in that action entered a 100-page order holding those defendants in contempt for "continu[ing] to ignore and violate the Court's

1

injunction" to minimally improve the unlawful conditions, these Defendants retaliated against Mr. Rogers for speaking with his legal counsel with the Southern Center for Human Rights. *Id. sub nom, Daughtry v. Emmons*, Doc. 484 at *1.

3. These Defendants had previously threatened him, stating after each time that he spoke with his counsel that he was "ratting" and "snitching."

4. When Mr. Rogers continued to speak with his attorneys, and after he spoke up after Defendants removed his personal items from his cell that he had purchased from commissary, Defendants orchestrated a brutal attack that included beating him in the head with a metal baton more than ten times while he was handcuffed, tazing him repeatedly, and threatening the life of his daughter on the outside.

5. This is Mr. Roger's attempt to obtain justice and accountability and to deter future misconduct pursuant to 42 § U.S.C. § 1983, the First and Eighth Amendments, and 42 § U.S.C. § 1985(2).

## JURISDICTION AND VENUE

6. This case presents federal questions under 42 U.S.C. § 1983 and 42 USC § 1985(2), as well as the First and Eighth Amendments of the Constitution. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7. Upon service of process, this Court acquires personal jurisdiction of Defendants under Fed. R. Civ. P. 4(k)(1)(a).

8. Venue is proper in the Middle District of Georgia under 28 U.S.C. §1391(b) because all acts occurred within this District and Division.

9. Plaintiff has complied with the provisions of 42 U.S.C. § 1997e, by timely grieving the assault. GDC referred the grievance to the Criminal Investigations Division, which exhausted the grievance.

## PARTIES

10. Plaintiff Caesar Rogers is a United States Citizen.

11. At all relevant times, Defendant Joe Williams, Jr. was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

12. At all relevant times, Defendant De'Marcus Holloway was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

13. At all relevant times, Defendant Leondre Kincy was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

14. At all relevant times, Defendant Asanie Ansine was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

15. At all relevant times, Defendant Myles Calhoun was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

16. At all relevant times, Defendant Kenneth Lucas was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

17. At all relevant times, Defendant Jeffrey Davis was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

18. At all relevant times, Defendant Justin Thomas was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

19. At all relevant times, Defendant Gregory Arnold was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

20. At all relevant times, Defendant Carmyhah Robinson was a Georgia Department of Corrections official. She is sued in her individual capacity for actions taken under color of law.

21. At all relevant times, Defendant Kenneth Graves, Jr. was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

22. At all relevant times, Defendant Johnathan Clark was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

23. At all relevant times, Defendant Andrew Pendelton was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

24. At all relevant times, Defendant Lee Major was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

25. At all relevant times, Defendant Flemister Wiley was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

26. At all relevant times, Defendant Dennis Turner was a Georgia Department of Corrections official. He is sued in his individual capacity for actions taken under color of law.

## FACTS

27. In late 2023 and early 2024, it appeared likely that the defendants in the conditions of confinement class action would be sanctioned in some form for their continued noncompliance with Court orders.

28. During this time, Mr. Rogers spoke frequently with his legal counsel, including staff who was legal counsel in that action.

29. After each time Mr. Rogers spoke with his advocates, Defendants would make statements that made clear that he would be punished for speaking with counsel.

30. After he spoke with his legal counsel about Defendants' misconduct, Defendants would say that Mr. Rogers was "snitching" and "ratting" to the "Southern Center."

31. Defendants were further angered at Mr. Rogers because he would file grievances about conditions, including the improper removal of personal items from his cell.

32. Defendants would accuse Mr. Rogers of "snitching" and "ratting" when he filed grievances.

33. At one point, Defendants Wiley and Lucas told Mr. Rogers that he was going to be killed for this.

34. On one occasion, Defendants improperly took bars of soap he had purchased from commissary from his cell while he was talking to his counsel with the Southern Center for Human Rights.

35. Defendants put slices of cheese on Mr. Rogers' cell door to label him a "rat" for others to see.

36. Defendants' actions were designed to intimidate Mr. Rogers and get him to refrain from advocating for himself and attempting to hold them accountable for their violations of the Constitution and GDC policy.

37. Defendants' efforts to silence Mr. Rogers' reached a new low in April 2024.

38. On the afternoon of April 8, 2024, Mr. Rogers was given bleach and soap to clean his cell by Defendant Arnold.

39. Mr. Rogers took this opportunity to complain that correctional staff had recently taken bars of soap that he had purchased from commissary from his cell.

40. Approximately twenty minutes after voicing this complaint, Defendants Arnold, Thomas, and Holloway came by Mr. Rogers' cell, while he was inside, and sprayed a large quantity of OC spray through the tray flap into the cell.

41. Defendant Arnold told Mr. Rogers that he was going to be killed.

42. The sole purpose of this punishment was to retaliate against Mr. Rogers' speech activity advocating for himself in the face of persistent misconduct.

43. The use of OC spray was intentionally painful and without any valid penological purpose.

44. Each Defendant knew that OC spray was causing Mr. Rogers significant discomfort.

45. No Defendant did anything to decontaminate Mr. Rogers or alleviate the pain.

46. Later in that afternoon, and into the morning of April 9, 2024, Defendants conspired to further punish Mr. Rogers for speaking up.

47. On the morning of April 9, 2024, approximately 10 CERT officers showed up at Mr. Rogers' cell door to perform a cell extraction.

48. Mr. Rogers knew that there was no cause for a cell extraction because GDC policy and practice was that CERT teams would only be used when an incarcerated individual refused commands or presented an imminent security

threat, and Mr. Rogers knew he had not refused any command and presented no security threat.

49. Mr. Rogers knew that the reason the CERT team was at his cell door when he had not refused any command or presented any imminent security threat was that he was going to be beaten.

50. The CERT team was comprised of, at least, Defendants Thomas, Arnold, Holloway, Kincy, Davis, Graves, Ansine, Robinson, Clark, Pendelton, Calhoun, and Lucas.

51. Defendants Major, the Unit Manager; Wiley, a Deputy Warden, Turner, another Deputy Warden; and Williams, the Warden; were supervisors who personally approved of the improper use of the CERT team in this instance.

52. Together, each of the Defendants conspired and agreed among themselves on April 8 and 9, 2024, that they would raid Mr. Rogers' cell and inflict gratuitous violence on him in retaliation for his advocacy for himself and others.

53. The CERT team entered Mr. Rogers' cell and immediately began to inflict significant violence on Mr. Rogers that caused serious injuries.

54. Defendant Thomas strangled and punched Mr. Rogers and told him to "stop resisting" when Mr. Rogers was not resisting (and after was incapable of doing so).

55. Defendant Holloway beat Mr. Rogers with a metal asp in his head and broke Mr. Rogers' hand. These asp strikes included repeated blows after Mr. Rogers was handcuffed and not resisting (and otherwise incapable of resisting).

56. Defendants Kincy and Graves repeatedly deployed a taser on Mr. Rogers when Mr. Rogers was not resisting (and after he was incapable of doing so).

57. Defendant Davis repeatedly deployed OC spray on Mr. Rogers without any penological purpose.

58. Defendants Ansine and Robinson and Clark selectively filmed the interaction, making sure to capture sounds of the false and pretextual commands to "stop resisting," but aiming the camera at the ground or wall when the other Defendants beat Mr. Rogers when he was not resisting.

59. Defendants Pendelton, Calhoun, and Lucas facilitated the other Defendants' use of force and failed to intervene to stop the unlawful force despite being able to do so.

60. The violent attack lasted approximately ten minutes, and during most of this time, Mr. Rogers was handcuffed and not resisting (and not capable of resisting).

61. Mr. Rogers was then dragged to medical, leaving a trail of blood.

62. At medical, Defendant Thomas tried to beat Mr. Rogers again.

63. Defendant Thomas also warned Mr. Rogers not to speak about this incident, again stating that he knew where Mr. Rogers' daughter lived.

64. He then stated the address where she lived.

65. Defendant Major made a comment to the effect of "I told them it's not going to make you shut up," referring to the violence that had just been unleashed.

66. Defendant Williams tried to prevent Mr. Rogers from being seen at an outside hospital, but the doctor at medical insisted that Mr. Rogers go to the hospital.

67. After the fact, the pretextual justification offered to Mr. Rogers for the use of the CERT team and the excessive violence was to recover the bleach and soap from Mr. Rogers' cell.

68. But this was obviously false, as no one ever asked Mr. Rogers for these materials (and if they had, he would have returned them), and Defendants otherwise allowed incarcerated men to possess these cleaning materials.

69. Defendants then wrote out a different false justification in the incident report, falsely stating that Mr. Rogers had said "bitch, I will kill you" to a correctional officer, when he said no such thing and made no threat.

70. Unfortunately, the incidents involving retaliation for speech against Mr. Rogers are not isolated at the SMU.

71. During Defendant Williams' tenure as Deputy Warden and then Warden at the SMU, correctional officers have increasingly used violent force on handcuffed men.

72. In response to the obviously unlawful uses of force here, the supervisors—to include Thomas, Holloway, Pendelton, Robinson, Major, Wiley, Turner, and Williams—took no corrective action whatsoever. Instead, they ratified the unlawful violence by initiating a cover up and a false narrative in the incident report.

73. The attack on Mr. Rogers happened weeks after a federal judge found there was ample evidence that GDC officials had maliciously prosecuted an investigator who had met with a man incarcerated at the SMU, framing her for bringing drugs into the facility based on "categorically untrue" statements. *See Engleman v. Adkerson*, No. 1:21-cv-1992-MLB, Doc. 89 at *30, *36 (N.D. Ga. March 1, 2024) ("Adkerson's mischaracterization of the video is hard to understand" because his statement to the magistrate was "totally at odds with the content of the video.").

74. Mr. Rogers' injuries included significant wounds to his head, requiring 23 staples to stem the bleeding; a broken hand; 4 stitches to close a wound on his ear; and a concussion that has caused persistent headaches and blurred vision.

## COUNT ONE | 42 U.S.C. § 1983 EXCESSIVE FORCE

75. There was no need for Defendants to use any force on Plaintiff on April 8 or 9, 2024.

76. Instead, Defendants used greatly excessive force, as outlined in greater detail above.

77. The force was meted out with malicious and sadistic intent and not with any good faith basis or valid penological purpose.

78. Plaintiff suffered significant pain and long-term injuries as a result of the excessive force.

11

## COUNT TWO | 42 U.S.C. § 1985(2)
## CONSPIRACY TO OBSTRUCT JUSTICE

79. On April 8 and 9, 2024, each Defendant agreed amongst themselves to deter Plaintiff from advocating for himself and others in the conditions of confinement case by means of unlawful and excessive force, by intimidation, and by threats.

80. This conspiracy was undertaken to prevent Plaintiff from freely, fully, and truthfully offering information in a civil rights case in which Mr. Rogers was a class member and party, and to retaliate against him for having previously provided information in furtherance of that litigation to his legal counsel.

## COUNT THREE | 42 U.S.C. § 1983 FREE SPEECH RETALIATION

81. In retaliation for Plaintiff's protected speech activity, including meeting with his legal counsel, filing grievances, and orally complaining about other misconduct, Defendants used violence against him.

82. Defendants' violence was an adverse action undertaken in retaliation for protected speech.

83. Defendants' actions would deter a reasonable person from exercising their free speech rights.

## COUNT FOUR | PUNITIVE DAMAGES

84. Each Defendants' actions and use of force, as described herein, were malicious, oppressive, and taken with reckless disregard to Plaintiff's constitutional rights such that Plaintiff may recover punitive damages.

85. Each Defendants' actions were designed and with the specific intent to cause harm to Plaintiff.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests this Court:

a) Hold a trial by jury on all issues so triable;

b) Award nominal, presumed, compensatory, special, and punitive damages to Plaintiff against Defendants in an amount to be proven at trial;

c) Award Plaintiff attorney fees under federal and state law;

d) Tax all costs of this action against Defendants;

e) Award any additional or alternative legal or equitable relief that is just and appropriate.

Respectfully submitted, this 10th day of October, 2025.

*/s/ Zack Greenamyre*
Zack Greenamyre
Georgia Bar No: 293002

Mitchell Shapiro Greenamyre & Funt, LLP
881 Piedmont Avenue
Atlanta, GA 30309
404-812-4747
404-812-4740 (fax)
zack@mitchellshapiro.com